Argued February 9; affirmed April 13, 1943

# SILFAST *v.* MATHENY
(136 P. (2d) 260)

[ 1 ]

Before BAILEY, Chief Justice, and ROSSMAN, KELLY, LUSK and HAY, Associate Justices.

*Robin D. Day,* of Salem, for appellant.

*W. C. Winslow,* of Salem (Roy Harland, of Salem, on the brief), for respondent.

ROSSMAN, J. This is an appeal by the defendant from a judgment against him based upon a verdict; the amount is $500. The complaint alleges that June 24, 1938, the defendant assaulted the plaintiff and struck her over the head with the handle of a broom. The complaint seeks $25 special damages, $1,000 general damages and $1,000 punitive damages. The answer denies all averments of the complaint and alleges that the defendant acted in self-defense.

The defendant, besides growing strawberries upon a six-acre tract, operated nearby a combination store and restaurant. In the 1938 season the plaintiff and her husband were in the defendant's employ as strawberry pickers. The sums which the pickers earned were evidenced by small pieces of cardboard of various colors called tickets which were issued to them when they brought in the results of their efforts. The tickets were cashed in the store. On the evening of June 28 the plaintiff and her husband called at the store for the purpose of obtaining money upon their tickets. They first spoke to the defendant's wife and were told, so the plaintiff and her husband swore, that they would have to make their request of the defendant. The latter at that time was seated in the restaurant eating his dinner. When he had finished his meal he

did not speak to his two callers, but obtained a broom and began to sweep the floor. About this time the plaintiff again spoke to the defendant's wife, explained to her that she was ill and needed money with which to purchase medicine. At that juncture, according to her testimony, the following happened:

"* * * then my husband came over and he says, 'What's the matter, can't you get no money?' And I said, 'No, she wants me to take it in groceries.' And he said, 'Give me the tickets' and he took them and walked over to the counter and said, 'Mr. Matheny, I want to get some money on these tickets,' and he said, 'You will not get a cent until Thursday, you dirty dog, get out.' My husband said—this is swearing—he said, 'I am going to find out why the God damn hell I can't get my money.' Then I took the tickets, I had walked over, and I turned around and said, 'Please give me a little money on these tickets.' He was leaning over and he had the broom a little bit that way (illustrating) and he said, 'No, get out, you dirty dog, you.' I said, 'You are not getting away with this,' and I slapped him on the jaw, and he grabbed out and come down across my head with both hands, * * *.' "

The plaintiff testified that she administered the slap "I suppose as hard as I could."

According to the evidence, the defendant struck the plaintiff over the head with the handle of the broom. It will be seen from the plaintiff's testimony that she swore that the defendant wielded the broom "with both hands." The physician who attended to the plaintiff's wound testified:

"This wound was about two inches long and was bleeding quite profusely and required four sutures to close it. * * * She complained of

headache at the time and afterwards and from the history that was given she was stunned slightly and this, followed with headache, is evidence some concussion must have taken place."

He attended the plaintiff from June 24 until August 3, and charged $25 for his services.

According to the plaintiff's husband, he started to leave the place after the defendant had said to him, "You dirty dog, get out," but returned when he saw his wife staggering from the blow which she had received. When he stepped toward his wife for the purpose of supporting her, the defendant struck him twice with the broom handle. After the foregoing had occurred, the plaintiff and her husband left. The blow which struck the plaintiff is the battery mentioned in the complaint.

The first assignment of error is based upon a ruling which denied the defendant's motion for a nonsuit. In support of that assignment of error, the defendant argues that the foregoing evidence shows that the plaintiff was the aggressor and that the defendant struck only in self-defense.

Section 26-2401, O. C. L. A., says:

"Resistance to the commission of a crime may be lawfully made by the party about to be injured or by any other person in his aid or defense:

"(1) To prevent a crime against his person; * * *"

■ The same principle, but with the necessary detail, is thus stated in Restatement of the Law, Torts, § 63:

"(1) The intentional infliction upon another of * * * bodily harm by a means not intended

or likely to cause death or serious bodily harm is privileged for the purpose of preventing the other from inflicting  *  *  *  bodily harm upon the actor, if  *  *  *

"(b) the means which the actor uses in self-defense are reasonable in view of the character of the contact or bodily harm from which he is attempting to protect himself, and

"(c) the actor reasonably believes that such contact or harm can safely be prevented only by the immediate infliction upon the other of  *  *  * bodily harm  *  *  *."

From § 70 of the same volume, we take the following:

"The actor is not privileged to use any means of self-defense which is intended or likely to cause a bodily harm or confinement in excess of that which the actor correctly or reasonably believes to be necessary for his protection."

■ From the evidence above reviewed, we believe that the jury could reasonably have inferred that (1) there was no need for self-defensive action; the slap was administered in retaliation for the insulting words, "You dirty dog", with no indication of a purpose to strike again; (2) the defendant employed excessive force if he, in fact, believed that it was necessary for him to act for his own protection; and (3) the defendant struck the plaintiff for the same reason that he called her a dirty dog; that is, out of ill will and not for the purpose of self-protection.

We believe that the motion for a nonsuit was properly denied.

■ The second assignment of error is based upon a ruling which denied a motion made by the defendant near the close of the trial for a continuance. The fol-

lowing is the motion as made by the defendant's counsel:

"I would like to get a continuance until tomorrow morning at nine o'clock, to get two witnesses we have been trying to locate and just this afternoon we found out where they are. They are living in Polk county and we can't get them by phone and will have to go and get them."

Upon an inquiry made by the presiding judge, defendant's counsel stated that the testimony which would be given by the missing witnesses would be cumulative. Generally, the granting of a continuance for the purpose of enabling the moving party to procure cumulative evidence lies in the discretion of the presiding judge. We know of nothing which indicates that the discretion was not properly exercised. This contention, therefore, discloses no error.

The remaining assignments of error, five in number, are based upon instructions requested by the defendant.

■ The first of the five requested instructions consists of (a) a dictionary definition of the term "assault"; (b) the language of § 26-2401, O. C. L. A., above quoted; and (c) the statement: "If you find from the evidence that the plaintiff struck the defendant first, he had a perfect right to defend himself from further assault." The instructions gave the jury excellent definitions of the terms "assault" and "assault and battery" and a good statement of the circumstances under which a person attacked may defend himself. They also said:

"* * * if defendant struck plaintiff as a means of self-protection, that is, within the rule suggested for your guidance, then he would be justified, and plaintiff could not recover. * * *"

That language certainly is superior to the part of the requested instruction which we just quoted.

■ The second requested instruction which the court declined to give is one which states that "an assault and battery on the person of the female sex, in general principle, does not differ from the assault and battery upon persons of the male sex, for example, * * *." The fact that the plaintiff was a woman and the defendant a man did not demand the giving of that instruction. Our constitution requires that "the most competent of the permanent citizens of the county shall be chosen for jurors." Certainly, persons of that type are familiar with the simple principle that the quoted words state. The instructions given dealt with the plaintiff regardless of her sex. They said:

> "No words alone, however vile or provoking, used by one person toward another will justify an assault or an assault and battery, nor will the non-payment of a claim for money, however just the claim and demand may be, justify an assault or assault and battery * * *. Every person has a right to protect himself from personal violence or great bodily harm. The law of nature comprehends and justifies many acts. The great principle, self-preservation, is paramount to all obligations * * *. The defendant, if unjustifiably attacked by plaintiff, had the right to repel force by force, the right to anticipate impending force and repel it by force. * * *"

The third requested instruction which the trial judge declined to adopt seemingly was intended to state the law applicable to the situation, if the jury found that the plaintiff was the aggressor and the defendant used excessive force in repelling her. A principle which is as applicable to requested instruc-

tions as to those actually given is that they should be expressed in simple, clear, concise language, capable of ready understanding by the layman juror. Although this requested instruction dealt with the situation which we have just described, nevertheless, it violates the principle of clarity to such an extent that the appellant himself apparently has become confused and deems it an instruction bearing upon the claim for punitive damages. For instance, the assignment of error under consideration brands this requested instruction as one which deals with the subject of "punitive damages." The requested instruction is followed with an argument, five lines long, one of which is: "The law will not give an aggressor punitive damages." We are satisfied that this instruction does not deal with the subject of punitive damages. A part of its phraseology is:

> "You are instructed that, if you find that the plaintiff struck the defendant first, you must then find, in order to find for the plaintiff, that the defendant exercised excessive force; in other words, the defendant in this case, if the plaintiff struck him first, is liable only for such injuries unnecessarily caused by him flowing from excessive violence. In this regard, you must bear in mind that the defendant, if you find that the plaintiff struck him first, had a right to defend himself against further attack and his liability is limited to  *  *  *."

We believe that the legal principles invoked by this complex language were properly stated to the jury. They were, moreover, stated with simplicity, clarity and brevity, all of which are virtues when found in instructions. These virtues should not be foreign to requested instructions. The ultimate purpose of in-

structions is not that they may stand up under calm analysis in the quietude of the losing attorney's law office, but that they convey the needed information to the juror as he sits and listens in the box. The part of the requested instruction which implied that the defendant could properly strike back if the plaintiff struck the first blow was erroneous. The plaintiff freely conceded, upon direct examination, that she struck the first blow. The defendant was justified in striking back only in the event that a return blow was necessary for his own protection. The latter was virtually the principal issue in the case.

■ The next requested instruction is one which, in fact, deals with punitive damages. A part of it states:

"You are instructed to not consider these damages as there is no evidence of forethought or maliciousness in this case."

That statement could have been correctly given to the jury only in the event that it was true. The jury had the right to infer that the defendant was, in fact, prompted by ill will toward the plaintiff and her husband. He knew that they had come to obtain money for the wages they had earned in picking strawberries for him, and seemingly avoided them until the plaintiff's husband approached him with a request for money. Substantial evidence indicates that the request was politely made. At that point the husband was directed to leave the place and was termed "a dirty dog." Then the plaintiff, in language which was proper and non-irritating, made a request for payment; in fact, she preceded the request with the word "please." At that point she, too, was addressed with the epithet "dirty

dog" and was directed to leave. Surely, under those circumstances, the instructions could not have properly said, "There is no evidence of forethought or maliciousness in this case."

The fifth, being the final requested instruction which the trial judge refused to adopt, said: "* * * you are, therefore, instructed to bring in your verdict for the defendant." We have already reviewed the testimony which preceded the motion for nonsuit. As a witness, the defendant did not deny that he applied the term "dirty dog" to both the plaintiff and her husband. Likewise he did not deny that he ordered both of them out of his place. He swore that when the plaintiff struck him he was stooped over sweeping dust into a dustpan and that he was "knocked practically down." Having given that testimony, he said, "I come up fighting." Shortly he repeated it, saying, "and I got up fighting." When the encounter was over, according to his testimony, "I laughed a little, I think, I thought it was pretty funny." With that testimony in the record, it is impossible to say that this man, who seized a broom with both hands and brought it down upon the head of the plaintiff, was acting in self-defense. As he himself said, he "got up fighting" and when the victims had left, "thought it was pretty funny." Seemingly, self-defense was not in his mind. He was in a fighting mood. Being in that mood, he refused to consider payment of wages which he owed, called his employees dirty dogs, ordered them out of his place of business, "got up fighting" and brought the broom handle down upon this woman's head. Whatever may have been the merits of his case, he certainly was not entitled to a directed verdict.

The assignments of error, based upon the requested instructions, in our opinion, possess no merit. We have carefully read the instructions which were given to the jury and believe that they are free of error.

The above disposes of all assignments of error. None of them possesses merit. The judgment of the circuit court is affirmed.