Argued November 7; reversed December 4, 1945

## NATWICK *v.* MOYER ET UX.

(163 P. (2d) 936)

*Charles W. Reames,* of Medford, for appellants.

*Gus Newbury,* of Medford (with Don R. Newbury, of Medford, on the brief), for respondent.

LUSK, J.

Plaintiff's intestate, Carlyle Roy Natwick, suffered fatal injuries in a collision between a Chevrolet truck, which he was operating, and a Chevrolet coach driven by the defendant Kenneth John Moyer and owned by his wife, the defendant Mrs. Kenneth Moyer.

Ruth Natwick, widow of the deceased, as administratrix of his estate, brought this action to recover damages for her husband's death, and the jury awarded her a verdict of $10,000.00. The defendants have appealed from the consequent judgment.

One of the assignments of error is based on the denial of the defendants' motion for a directed verdict on the alleged ground of insufficiency of the evidence of negligence.

The accident occurred February 18, 1944, at about 8:00 p. m. on the Crater Lake Highway in Jackson County, Oregon. It was more or less of a head-on collision. The decedent was driving south and Kenneth John Moyer north. The pavement was dry, the road straight and wide—the paved portion being twenty-one feet in width—and no other automobiles were about. As in most cases of this character—although the complaint contains five charges of negligence and the answer thirteen charges of contributory negligence—the controlling question with the jury, no doubt, was, which automobile was on the wrong side of the road. On that issue there was uncontradicted evidence from two state police officers, who investigated the accident a few minutes after its occurrence, that they observed on the west side of the pavement, which was Natwick's side, a quantity of debris consisting of broken glass of the kind used in headlights, and dried mud such as is found under the fenders of automobiles, and "parts of either one or both" of the cars involved in the accident. This material was about two and a half feet west of the yellow line which marks the center of the pavement, and from about that point a freshly-made, deep indentation or cut in the pavement extended north to the left front wheel of the Chevrolet coach, the tire of which had blown out and was practically off the wheel, leaving the rim of the wheel in contact with the pavement. The Chevrolet coach was at that time standing almost diagonally across the highway facing west, its rear end east of the yellow line, its front end about two and a half feet from the west edge of the pavement. The truck had been turned over in the accident and was lying on its top some two to eight feet south of the point where the cut in the pavement started, and to the west of that point. Its front wheels had been torn

off, the radiator lay on the west edge of the highway, while the cab was thirty feet further south on the shoulder. The distance between the two vehicles was sixty-nine and a half feet. There was no debris on the east half of the highway, the defendant's side.

From these facts we think it would not be unreasonable for a jury to conclude that the collision occurred at about the point where the debris was observed, and was caused by the negligence of the defendant Kenneth John Moyer in driving on the wrong side of the road, notwithstanding that he and three of his four companions in the Chevrolet coach, who were the only living eye witnesses to the accident, swore to the contrary. It was circumstantial evidence to be weighed by a jury, and the motion for a directed verdict was, therefore, properly denied.

The defendant Kenneth John Moyer, at the time of the accident, was a staff sergeant in the United States Army stationed at Camp White in Jackson County, Oregon. Over the objections of counsel for the defendants testimony was received purporting to show that after the accident a test of said defendant's blood was made which disclosed the presence of a quantity of alcohol sufficient to indicate intoxication. The admission of this testimony is the subject of several assignments of error. The witness was Captain Francis W. Porro, an officer in the medical corps of the United States Army attached to the Camp White Hospital. After qualifying as an expert he testified as follows (omitting defendants' objections and the court's rulings thereon):

"Q Now doctor, do you know whether or not any test of that character was made of Kenneth J. Moyer on or about February 18th, of 1944?

"A  Yes.

"Q  State whether or not that test was made in your department and in the department over which you have charge.

"A  It was.

"Q  And what date was it made?

"A  The specimen of blood was taken on the 18th and the analysis, test was made on the 19th.

"Q  Do you know what hour the specimen was taken?

"A  Approximately.

"Q  Approximately what hour was it?

"A  About ten o'clock in the evening.

"Q  Ten o'clock in the evening of February 18th?

"Q  Do you have charge of the records of such tests that are made in your department?

"A  Yes sir.

\*  \*  \*

"Q  Doctor, was this blood specimen taken from Mr. Moyer as a matter of treatment of any injuries or condition that he may have been suffering from, or was it to determine whether or not and the extent of intoxication, if any?

"A  It was taken to determine whether he was intoxicated or not.

"THE COURT: Who took the specimen?

"A  A sergeant in my department.

"THE COURT: Was it under your instruction?

"A  Well, the request actually comes from the,— that is, not a specific instruction,—that is part of his regular duties if he is requested by any medical officer to take it.  Any medical officer that happens to be on duty can request any laboratory tests that he wishes and the members of my department take them and I supervise the work that's done and the interpretation of it.

"THE COURT: Are you able to testify that this sample is given voluntarily?

"A  No sir, I am not.

"THE COURT: You were not treating this defendant for any injury that he received?

"A He was examined for the possibility of injuries, but this test is not done for the purpose of treatment.

"Q Doctor, was the specimen taken pursuant to the request of any military officer?

"A Yes sir, it was.

"Q Do you know whose request it was?

"A Yes sir.

"Q Whose was it?

"A I have a record of it.

"Q What do your records disclose?

"THE COURT: Is that the hospital record?

"A Yes sir.

"THE COURT: He may testify.

"A Lieutenant Colonel Benick.

"Q Captain, you have in your hands there a sheaf of records. What are those?

"A Well, it is a record of the request made by Col. Benick and of the laboratory report made in response to the request.

"Q Are those regular hospital records made in the regular course of duty and practice in the hospital at Camp White?

"A Yes sir.

"Q And state whether or not those records were made under your direction or supervision.

"A Well, they were completed under my supervision. that is—all laboratory requests are made out by someone else originally. That is, I don't request the work; some other doctor does in all cases and the request comes through my department. It is finished and the report dated and returned.

"Q As I understand you then, the request that a test be made comes from some other officer and it is your duty to make the test and give a report on it. Is that it?

"A Yes sir.

"Q And do you have the record of the request and of the test and of the report that was made in your possession there?

"A Yes sir.

"Q State whether or not that's a part of the regular records of your department at Camp White?

"A It is.

"Q And are those records kept under your supervision at Camp White?

"A Yes sir.

"Q From the records that you have before you, or from your own personal knowledge,—whichever place you get the information, state what the test and the laboratory report shows as to whether or not Kenneth J. Moyer was intoxicated when the test was made.

"A The result of the test is 108 milligrams of alcohol per 100 C.C. of blood, and that is,—indicates a level of mild intoxication, or drunkenness. I should explain that it is the lowest level that is recognized, but it is within the limits of intoxication,—the level required for intoxication."

The hospital records were not offered in evidence.

The numerous objections to the foregoing testimony were based on the grounds, among others, of hearsay and want of a proper foundation.

■ Before Captain Porro's testimony, as to the result of the blood test could be received, it was, of course, essential to show by competent evidence that the blood analyzed was taken from the defendant Kenneth John Moyer. We assume from the affirmative answer to the question, "It is your duty to make the test and give a report on it?" that it was Captain Porro who made the test. But there is nothing to show that he had any knowledge, unless it was gained from the hospital records, that a sample of Moyer's blood had been taken or that it was Moyer's blood which he analyzed; there

is no evidence whatever as to the identity of the blood which the witness analyzed. Clearly, therefore, his testimony respecting the result of the test was pure hearsay so far as the defendants were concerned. It is not aided at all by the fact that he had the hospital records with him on the stand and referred to them, because, although the records were, as he said, completed under his supervision, obviously they could not be used to refresh his memory respecting facts which had never been otherwise within his knowledge.

We are, therefore, of the opinion that the evidence of Captain Porro was erroneously admitted, and we think that the error was of such gravity as to call for a reversal of the judgment. The question whether the defendant Kenneth John Moyer was intoxicated was a disputed one. He and his four companions denied it. The view which the jury should take of this question would be likely to affect their judgment upon the ultimate issue of negligence, and we cannot say that the erroneously admitted testimony did not influence their verdict.

■ In view, however, of another trial, we deem it proper to say that under the "Uniform Business Records as Evidence Act" (Ch. 414, Oregon Laws 1941), the hospital records themselves would be competent evidence, if relevant to the controversy, and if compliance with the conditions of the statute were shown. Wigmore on Evidence (3d ed.) §§ 1517-1520, 1530 (a); VI, id. § 1707. See, *Freedman v. Mutual Life Ins. Co.,* 342 Pa. 404, 21 Atl. (2d) 81, 135 A. L. R. 1249; *Gile v. Hudnutt,* 279 Mich. 358, 272 N. W. 706; *Loper v. Morrison,* 23 (2d) Cal. 600, 145 P. (2d) 1; annotation 144 A. L. R. 731. But we intimate no opinion as to whether a hospital record, without more, will suffice to establish the identity of blood tested.

■ Another ground of objection to Captain Porro's testimony was that the presence of alcohol in the blood stream is no evidence of intoxication. We think that when intoxication is the issue, testimony by a qualified witness as to the result of a blood test has probative value and should be received. The subject of blood and urine tests in this connection has been discussed in numerous published scientific treatises, and there is ample support for the following statement from the exhaustive article, "The Medico-Legal Aspects of the Blood Test to Determine Intoxication" by Ladd and Gibson, 24 Iowa L. Rev. 190:

> "The blood and urine test to determine intoxication has reached a stage of scientific development and reliability where it may serve a most useful purpose in assisting courts and juries to discover the truth in cases in which intoxication is an issue."

See, also, Hager, "Some Practical Aspects of Chemical Tests for Intoxication", 35 Journal of Criminal Law and Criminology 202; Mamet, "Constitutionality of Compulsory Chemical Tests to Determine Alcoholic Intoxication", 36 id. 132; and the references in these articles to the literature of the subject, medical society reports, etc. All the courts which have passed on the question have sustained the materiality of such evidence. *Commonwealth v. Capalbo,* 308 Mass. 376, 32 N. E. (2d) 225; *State v. Haner,* 231 Iowa 348, 1 N. W. (2d) 91; *State v. Duguid,* 50 Ariz. 276, 72 P. (2d) 435; *Kuroske v. Aetna Life Insurance Co.,* 234 Wis. 394, 291 N. W. 384, 127 A. L. R. 1505, with annotation at p. 1513. In the recent case of *State v. Cram,* 176 Or. 577, 160 P. (2d) 283, we held evidence of a blood test admissible as against the objection that its admission would violate the defendant's constitutional privilege

against self-crimination. However, the question of the materiality of the evidence was not raised in that case.

■■ Other grounds of objection to the testimony of Captain Porro urged in the defendants' brief are without merit. One contention is that the test offends against the rule that a witness will not be permitted to express an opinion on the merits of the case. See *Cosgrove v. Tracey,* 156 Or. 1, 9, 65 P. (2d) 1321. An expert witness, testifying as to the result of a blood test, may say that a given quantity of alcohol found in the blood of a particular individual indicates intoxication in a greater or less degree. But, since his testimony is based solely on the result of the blood test, he may not, of course, give his opinion that the individual in question was in fact intoxicated. In this particular the testimony of Captain Porro is not objectionable. On the other hand, the competency of such evidence is not at all impaired because some persons yield more readily than others to the deleterious effects of intoxicants. That fact may lessen the weight of the expert testimony with the jury, but it cannot be employed to exclude it. It is but other evidence to be considered in determining the question of intoxication *vel non.*

■■ The original answer of the defendants alleged a counter-claim in the amount of $420.00 alleged to have been sustained by the defendants as the result of damage to the Chevrolet coach. A demurrer to the counter-claim was sustained by the court, and the ruling is assigned as error. We think the ruling was correct. While the action was brought by the personal representative of the deceased, any recovery would inure under the statute to the benefit of his widow, Ruth Natwick. Section 8-903, O. C. L. A. She was the real party in interest. *Hansen v. Hayes,* 175 Or. 358, 154 P.

(2d) 202. The defendants had no cause of action against Ruth Natwick for damage to their automobile, and could not recover for such damage in an action brought for the sole benefit of Ruth Natwick, notwithstanding the fact that the action was brought in the name of the administratrix of the estate of Carlyle Roy Natwick. Beyond that, under the decisions of this court, the demurrer was waived when the defendants filed an amended answer. *Scandinavian-American Bank v. Wentworth Lumber Co.,* 101 Or. 151, 155, 199 P. 624; *Wells v. Applegate,* 12 Or. 208, 6 P. 770; *Huffman v. McDonald,* 1 Or. 259. But see *Patterson v. Horsefly Irrigation District,* 157 Or. 1, 11, 69 P. (2d) 282, 70 P. (2d) 33.

■ Error is assigned because the court denied the defendants' motion for a continuance based on the ground that the defendant Kenneth John Moyer was in the military service of the United States. See § 521, Title 50, App., U. S. C. A. Since the judgment must be reversed, we deem it unnecessary to pass on the propriety of the ruling, as the ground of the motion may have ceased to exist when the case shall be tried again. Our decision will be without prejudice to the right of the defendants to renew the motion in the circuit court. The defendant Mrs. Kenneth Moyer, not being in the military service, is, of course, not entitled to the benefits of the federal act.

At the beginning of the trial defendants' counsel applied for an order authorizing the jury to view the truck driven by the decedent at the time of the accident. The defendants alleged in their answer, as a ground of contributory negligence, that the windshield of the truck was so dirty as to obscure the driver's view, and counsel for the defendants stated to the court that

he wished the jury to see the windshield. The court denied the application and the ruling is assigned as error. There is no statute in this state authorizing such a view. Section 5-302, O. C. L. A., provides that the court may order a jury view ''of the place in which any material fact occurred'' whenever, in the opinion of the court, it is deemed proper. The court's refusal to make such an order will only be reviewed for abuse of discretion. *Cox v. Rand,* 155 Or. 258, 262, 61 P. (2d) 1240; *Wade v. Amalgamated Sugar Co.,* 65 Or. 488, 492, 132 P. 710. We are not prepared to say that it is beyond the inherent power of the court in any circumstances to order an examination by a jury of some physical object which cannot conveniently be brought into court and introduced in evidence, but certainly the exercise of such power would be a matter of discretion with the trial judge, and we doubt whether in any case the court's negative action would be ground of reversal. In the present case the very least that could be said is that the court did not abuse its discretion, if for no other reason than that the trial commenced on July 26, 1944, more than five months after the accident, and the windshield could have accumulated considerable dirt in the meantime, and thus the jury would be misled, rather than aided, by the proposed inspection.

Over defendant's objection the witness Ruth Natwick was permitted to testify that the net income of herself and her deceased husband from their ranch during the year 1943 was in excess of $3,400.00. The testimony is criticized because it related to a single year and was of gross instead of net income. The measure of damages in this class of cases was defined in the recent case of *Hansen v. Hayes,* supra. Under the rule there stated any evidence tending to show the

earnings and income of the decedent was relevant, and a great deal of such evidence, and in much detail, was introduced by the plaintiff. Defendants had the right of cross-examination and the right to show that 1943 was an exceptional year, if that was the fact. The objection that the testimony related to gross income, even though valid in any case, is baseless. The witness was asked to state the net income for 1943, and answered that $3,400.00 was the net income. Her testimony, as it appears in the transcript, is not capable of misconstruction.

■ Of the remaining assignments of error—there are twenty-three in all—it need only be said that, with one possible exception, they are not of sufficient merit to warrant discussion. Some of the assignments challenging instructions given by the court are not even properly before us because counsel for defendants, in their brief, have ignored Rule 13 (3) of the rules of this court, concerning which we had something to say in *Penn v. Henderson,* 174 Or. 1, 146 P. (2d) 760; and, also, because the exceptions taken are wholly insufficient.

■ The court, in its instructions, did not define the issues, apparently because the pleadings had been read to the jury by one of the attorneys for the plaintiff in the course of his opening statement. We find no exception in the record which would give defendants the right to take advantage of this omission; nevertheless, we think it well to call attention to the duty of the court in its charge to advise the jury of the questions under the pleadings which they are to try—the allegations admitted and those denied; and in a case of this kind, the particular grounds of negligence on which the respective parties rely as grounds of recovery

or defense. See, *Richanbach v. Ruby,* 135 Or. 117, 120, 293 P. 430, 294 P. 1098; *Southern Oregon Co. v. Knight,* 112 Or. 66, 77, 228 P. 132, 228 P. 832. This is not to say that the pleadings should be read to the jury by the court. We think as a rule they should not be, for too often the language of a lawyer in a legal document is confusing to the layman, while a simple statement by the judge in ordinary language will be more apt to serve the purpose of making clear to the jury the precise questions which must be decided as the basis of their verdict.

For the error committed in the admission of Captain Porro's testimony the judgment is reversed and the cause remanded for further proceedings in conformity to this opinion.