Argued July 5, affirmed September 6, petition for rehearing denied
October 3, 1961

# STATE OF OREGON v. SMITH

364 P. 2d 786

*Duane R. Ertsgaard,* Salem, argued the cause and filed a brief for appellant.

*Donald H. Turner,* District Attorney, The Dalles, argued the cause and filed a brief for respondent.

Before MCALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and LUSK, Justices.

LUSK, J.

The defendant, Ernest Leroy Smith, was convicted of the crime of assault with intent to kill and appeals.

The charging part of the indictment reads:

"The said Ernest Leroy Smith on the 2nd day of March, A.D. 1957 in the County of Wasco and State of Oregon, then and there being, then and there armed with a dangerous weapon, to-wit, a loaded pistol, did then and there unlawfully and feloniously assault one Robert W. Brower, with

said dangerous weapon by then and there shooting at and toward him, the said Robert W. Brower, with said loaded pistol, with intent on the part of him, the said Ernest Leroy Smith, to then and there unlawfully and feloniously kill the said Robert W. Brower, who was then and there within shooting distance of said loaded pistol, contrary * * * ."

Robert W. Brower, the victim of the alleged assault, was a police officer of The Dalles, Oregon. At about four o'clock on the morning of March 2, 1957, he was on patrol duty in his automobile which was parked near the city limits off the Columbia River Highway with its headlights aimed across the highway. A 1949 Buick convertible automobile came within his view. He noticed two young fellows, one of whom was the defendant, inside the convertible and, his suspicion being aroused, followed it into the downtown section of the city. As a signal to the occupants of the Buick to stop, he turned on his red light and sounded his siren. Instead of stopping, however, the Buick, which was being driven by the defendant's companion, speeded up and Officer Brower gave chase. Shots were fired in his direction from the Buick. Brower fired twice himself. He lost sight of the Buick momentarily and when next it came into view it was stopped with the left rear fender badly crumpled and torn, apparently as the result of a collision with a telephone pole. Brower saw a man run across the highway towards the river firing as he ran from a gun held in his right hand over his left arm. This man was the defendant. Brower saw the flash of several shots. He got out of his car and about that time another police car came upon the scene. A short time afterwards, the defendant was arrested by a

city policeman as he was walking along the highway near the place where the Buick was disabled.

The foregoing facts were established by uncontradicted evidence.

In addition, there was received in evidence a signed statement of the defendant which the jury might rightly have considered a confession of guilt. Among other things, the defendant said in this statement that he fired eight shots towards Officer Brower's car while the cars were in motion. At a preliminary hearing in chambers upon the question of the admissibility of this statement, the defendant testified to mistreatment by the police and promises by the police of their help if he would cooperate and threats by them to do their best to hang him if he refused to cooperate. He did not, however, testify before the jury. The testimony of the police on this issue was that there were no threats, no promises, and no mistreatment of the defendant. The court properly ruled that the statement was admissible and submitted to the jury's determination the question whether it was given freely and voluntarily. No complaint is made of this ruling.

We proceed to a consideration of the assignments of error relating to questions properly raised in the record. We do so notwithstanding the failure of counsel for the defendant to comply with Rule 19 of this court and Appendix B to the rules which require that when the assignment is to a ruling on an objection to evidence the brief shall set forth the question, the objection made and the answer.

The court admitted in evidence three photographs of the rear of the Buick automobile showing holes in the rear window which could have been made by bullets. Before their admission the witness Brower

had testified that when he was in pursuit of the Buick he "saw some holes appear in the back window of the convertible and heard reports like gun shot." The defendant's counsel objected to the offer of the photographs on the grounds that "no proper foundation [was] laid" and that they were "immaterial and irrelevant as to this defendant." The admission of the exhibits is assigned as error. The record shows that the photographs depicted the condition and appearance of the rear window as it was observed by Officer Brower immediately after the shooting. They tended to corroborate his testimony that he was shot at through the rear window of the Buick and were, therefore, neither irrelevant nor immaterial as to the defendant, who was proved to be an occupant of the fleeing car. It is now argued, however, that the automobile itself should have been exhibited to the jury and the "best evidence" rule is invoked. This rule applies only to writings. McCormick, Evidence (Hornbook Series) § 195. It is said that the rear window of the vehicle would show that the bullet holes were made by projectiles entering, rather than leaving, the vehicle. No such contention was made when the photographs were offered in evidence, nor was it suggested by counsel for the defendant that the automobile itself be exhibited to the jury. At the most, a request of that kind would have been addressed to the discretion of the court. *Natwick v. Moyer,* 177 Or 486, 498, 163 P2d 936. Had it been made, there is nothing in the record to indicate that the court would have denied it or even that the state would have objected to it. Certainly, the grounds of objection as stated by counsel do not point to the question raised in this court. The phrase "no proper foundation [was] laid" in the context of this claim of error is a mere ritualistic

formula. As the court said in *Kennedy v. Woods,* 131 Neb 217, 220, 267 NW 390:

> "* * * If there was some particular respect in which the proof of foundation was lacking, the trial court's attention should have been specifically directed thereto by appropriate objection. * * *"

The assignment of error is without merit.

██ Error is assigned to the admission of fingerprint testimony given by the witness Clark Johnson, over the defendant's objections to the qualifications of the witness to testify as an expert on that subject. Johnson identified fingerprints "lifted" from the right door glass of the Buick convertible as the fingerprints of the defendant by the usual method of comparing the lifted fingerprints with fingerprints of the defendant made at the time he was lodged in the city jail. Johnson commenced studying textbooks on the subject of fingerprints under the direction of the director of the State Bureau of Identification in 1936, when he joined the Oregon State Police. Since 1946, he has been a fingerprint technician in the Bureau of Identification, his duties having been to classify and identify fingerprints and compile records of persons fingerprinted. He learned by "in-service training the classification and identification of latent finger prints." He had testified as an expert on the comparison and identification of fingerprints in other court cases. The question of the witness' qualifications was addressed to the discretion of the trial court, *Douglas County v. Meyers et al.,* 201 Or 59, 65, 268 P2d 625, and there was no abuse of that discretion. Counsel for defendant seems to think that the witness was not qualified because he had never received formal training in a fingerprint school, but there is no such rule either regarding expert testimony

in general (20 Am Jur 657-658, Evidence, § 784) or fingerprint testimony in particular. 2 Wharton, Criminal Evidence 335, 12th ed, § 510.

On the twenty-fifth of March, 1957, Sam J. Yoder, the proprietor of a restaurant, found a P-38 German pistol on the property of Dielschneider Equipment Company in The Dalles and turned it over to the police. The pistol was received in evidence over the objection of the defendant and the ruling is assigned as error. The assignment is without merit. The place where the pistol was found is in the immediate vicinity of the place where the Buick convertible was disabled and abandoned by the defendant and his companion. There was evidence that a bullet fired through the rear window of the Buick convertible struck the front of Officer Brower's car. A fragment of the metal jacket covering of the bullet was discovered behind the car's emblem. A ballistics expert testified that the fragment was fired from the pistol found by Yoder.

■■ There can be no doubt about the right of the prosecution to introduce in evidence weapons used in the commission of a crime. *State v. Chin Ping,* 91 Or 593, 604, 176 P 188; *State v. Pender,* 72 Or 94, 107, 142 P 615; 2 Wharton, Criminal Evidence 622, 12th ed, § 677. Of course the element of relevancy must be present. We think that it is a reasonable inference from the evidence outlined above that the pistol received in evidence was used by the defendant in the commission of the crime charged. Counsel for the defendant insists that the ruling was error because the pistol was admitted prior to the testimony of the ballistics expert. It is arguable that even without that evidence the pistol should have been received; but putting that to one side, the order of proof

is within the discretion of the trial judge and it is immaterial on appeal whether the evidence was admitted before or after its relevancy was established.

■ The defendant contends that at the time of the commission of the alleged offense no statute provided a penalty for the crime of assault with intent to kill and therefore his conviction cannot stand. If the premise asserted is correct the conclusion drawn from it would necessarily follow. *Smallman v. Gladden,* 206 Or 262, 277, 291 P2d 749.

On March 2, 1957, the date of the alleged crime, ORS 163.270 read:

> "Any person who assaults another with intent to kill, rob, or to commit rape upon such other, or to commit any of the crimes specified in ORS 163.230, shall be punished upon conviction by imprisonment in the penitentiary for a term not exceeding the maximum punishment provided by law for conviction of the respective greater crimes."

The statute has since been amended by Oregon Laws 1957, ch 640, but the amendment is not now pertinent.

The argument of the defendant is as follows: The penalty provided by this section is imprisonment in the penitentiary for a term not exceeding the maximum punishment provided by law for conviction of the respective greater crimes. In the case of assault with intent to rob, the respective greater crime is robbery. In the case of assault with intent to commit rape, the respective greater crime is rape. The legislature has provided penalties for robbery and rape, but this is not true of the act of killing another because "there is no statute which makes it a crime merely to kill another." *Smallman v. Gladden,* supra, 206 Or at 280. From this it is concluded that the legislature "has

removed assault with intent to kill from the criminal category, and reduced it to the class of undesirable conduct of which the law takes cognizance and brands as unacceptable, but does not make a crime."

The statute of this state denouncing assault with intent to kill as a crime was enacted in 1864. Deady, General Laws of Oregon, 1845-1864, § 528. With the exception of the penalty provision, which was originally punishment by imprisonment in the penitentiary not less than one nor more than ten years, the language of the statute remained substantially unchanged up to the 1957 amendment.

The penalty provision, as it read when this case arose, was contained in an amendment adopted in 1955. Oregon Laws 1955, ch 371, § 1. To effectuate this change in the penalty was the sole apparent purpose of the amendment. If the legislature, instead of changing the penalty, abolished it and the crime as well, the courts, of course, are powerless to correct the situation. We think, however, that it should go without saying that this is not what the legislature intended to do, and if there is a reasonable construction of the statute which would avoid such an untoward result, it is our duty to adopt such construction rather than to accept the defendant's view that in 1955 an assault with intent to kill, while undesirable, ceased to be a criminal act and punishable as such. After a consideration of the authorities, we have reached the conclusion that the 1955 amendment does provide a penalty for this offense.

In *State v. Lynch,* 20 Or 389, 391, 26 P 219, this court said that "the legal signification of the term 'assault with intent to kill' implies the unlawful and felonious attempt to take the life of another." This obvious truth is not to be lost sight of in any inquiry

as to the sense in which the word "kill" is used in the statute.

In *State v. Butman,* 42 NH 490, the defendant was indicted and convicted under an indictment charging assault with intent to kill and murder one Durgin. The court instructed the jury that if an intent to kill was proved, it would justify a conviction. A statute of New Hampshire provided for the punishment of manslaughter and further provided, as stated in the opinion of the court, "that if any person shall make an assault upon another, with intent to commit any crime described in this chapter, the punishment whereof may be death or confinement to hard labor for life, he shall be punished by confinement to hard labor, &c., in the state prison."

It was argued on appeal that "a party can not be convicted of an assault with intent to kill only, because the words, with intent to kill, exclude the idea of manslaughter, which is killing without a design to effect death." The court rejected this contention, saying:

"* * * It is not true that manslaughter is necessarily killing without a design to effect death. Some cases of manslaughter are of this kind. But there are other cases, where, notwithstanding the intention clearly was to destroy life, the offense is reduced to manslaughter, by circumstances of great and sudden provocation, or the like. * * *" 42 NH at 492.

The court further said:

"We are of the opinion that, under this indictment, if the evidence shows an intent to kill under such circumstances as to constitute a murder, if death had followed, the party may be convicted of assault with intent to murder. If the offense, if completed, would be manslaughter only, the

party may be convicted of an assault with intent to kill only, or may be convicted of an assault only. * * *" 42 NH at 493.

The judgment of conviction was affirmed.

The New Hampshire statute did not in terms denounce the crime of assault with intent to kill. It did, however, make punishable "an assault upon another, with intent to commit [manslaughter]." The necessary result of the opinion therefore is that the New Hampshire court treated the words "kill" in the indictment and "manslaughter" in the statute as interchangeable. And since an intent to kill is an essential element of the crime the proof, it was held, must show an intent to commit voluntary manslaughter, for there is no such offense as assault with intent to commit involuntary manslaughter. *Shorter v. State*, 147 Tenn 355, 360, 247 SW 985; *Fortner v. State*, 119 Fla 150, 156, 161 So 94; 40 CJS 948, Homicide, § 85.

In Massachusetts, as in some other states, an assault with intent to commit murder and an assault with intent to commit manslaughter are made felonies by statute. In *Commonwealth v. Demboski*, 283 Mass 315, 186 NE 589, the defendants were indicted for assault with intent to murder. They were found by the jury "guilty of assault with intent to kill." The conviction was sustained on appeal. The court said: "There is a difference between the intent to kill and an intent to murder; and the former may exist when one intends only such killing as amounts to manslaughter." 283 Mass at 322. The court considered at some length *State v. Butman*, supra, and relied on it as authority for the holding that an assault with intent to kill is tantamount to an assault with intent to commit manslaughter.

It is said in 26 Am Jur 577-578, Homicide, § 597, after a statement that the comments of the early writers on this subject are "meager and at variance in their import", that there "seems \* \* \* to be fair reason to suppose that 'kill' and 'murder' are used synonymously in this connection." There is dictum to the same effect in the early case of *State v. Lynch,* supra, 20 Or at 391. But in the *Smallman* case we recognized the distinction between the two words when used in this connection. We quote from the opinion:

"It is held that assault with intent to murder, when defined as a crime, involves the necessary element of malice, but that element is not necessarily present in assault with intent to kill. People v. Wilson, 342 Ill 358, 174 NE 398; State v. Crutcher, 231 Iowa 418, 1 NW2d 195, 199; Commonwealth v. Demboski, 283 Mass 315, 186 NE 589.

" 'There is a well recognized distinction between an assault with intent to murder and an assault with intent to kill. Malice is a necessary element to constitute an assault with intent to murder but it is absent in an assault with intent to kill or commit manslaughter, or, as it is said, the assault with intent to kill may be committed without malice. If malice is lacking and yet the assault is unlawful, the crime committed is of a lower degree than assault with intent to murder.' 40 CJS, Homicide, § 73, p 938." 206 Or at 280-281.

Additional decisions to the same effect are: *State v. Reed,* 40 Vt 603, 607; *Hall v. State,* 9 Fla 203, 209, 76 Am Dec 617; *State v. Leavitt,* 87 Me 72, 80, 32 A 787; *State v. Melendrez,* 49 NM 181, 185, 159 P2d 768; *State v. Bunn,* 195 Iowa 9, 12, 190 NW 155; *State v. McGuire,* 87 Iowa 142, 144, 54 NW 202; *State v. Mosca,* 90 Conn 381, 383-384, 97 A 340. See, also, 30 CJ 27-28, Homicide, § 172.

It is apparent from these authorities that the word "kill" in the statute under consideration has an established meaning. It connotes a felonious killing without malice, in a word, manslaughter. The "greater crime", therefore, the punishment of which provides the measure for determining the punishment on conviction of assault with intent to kill, is the crime of manslaughter.

There is nothing in the *Smallman* case at variance with this holding. The court there was concerned with the statute as it read before the 1955 amendment. There was no occasion to express an opinion relative to the construction of the amendment and none was expressed. But what was said generally regarding the nature of the crime of assault with intent to kill supports the view we have taken of the question raised by the defendant.

The indictment in this case properly alleges that the defendant "did then and there unlawfully and feloniously assault one Robert W. Brower", etc. It did not allege malice. In legal effect the charge laid was assault with intent to commit voluntary manslaughter and this is the crime disclosed by the evidence. The crime of voluntary manslaughter is defined in ORS 163.040 and the penalty for conviction thereof is fixed by ORS 163.080 as imprisonment in the penitentiary for not more than 15 years and by a fine not exceeding $5,000. The court sentenced the defendant to serve the term of not to exceed eight years in the penitentiary. For the reasons hereinabove given, the sentence had statutory warrant.

A number of other alleged errors are complained of, but we decline to discuss them because they are not raised on the record. Counsel for the defendant in this court, who did not represent the defendant on

the trial, insists that these matters should be considered, notwithstanding the failure to object, except, or otherwise call them to the attention of the trial judge during the trial, because, as the brief says, "of failure of counsel to properly protect defendant's rights." The brief even goes so far as to charge "collusion between the prosecutor and counsel for the defense to deprive defendant of representation and of a fair and impartial trial."

A reading of the entire record in this case reveals that the defendant received an eminently fair and impartial trial and that he was competently and vigorously defended. The charge of collusion is completely lacking in foundation and the evidence of the defendant's guilt was so strong, full, and convincing, that we doubt whether even a Clarence Darrow could have talked a jury into defeating the cause of justice by returning a verdict of not guilty.

The judgment is affirmed.