Submitted on remand from the Oregon Supreme Court August 25, 2020; argued on remand February 17; reversed and remanded March 17, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RYAN NOLAN HEINE,
*Defendant-Appellant.*

Benton County Circuit Court
16CR65170; A165326

484 P3d 391

A 12-person jury found defendant guilty, by nonunanimous verdicts, of two crimes: the Class C felony of tampering with a witness, ORS 162.285, and the Class B misdemeanor of harassment, ORS 166.065. Defendant appealed, the Court of Appeals affirmed without opinion, *State v. Heine*, 299 Or App 666, 449 P3d 609 (2019), and defendant petitioned the Oregon Supreme Court for review. In the interim, the United States Supreme Court issued *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), so the Oregon Supreme Court vacated and remanded *Heine* for reconsideration in light of *Ramos*. *State v. Heine*, 366 Or 760, 468 P3d 952 (2020). On remand, defendant contends that the jury unanimity requirement applies to petty offenses such as defendant's misdemeanor conviction. The state argues that, because there is no jury right for petty offenses, a state may dispense with the requirement of unanimity when it elects to use a jury to try a petty offense. *Held*: The Court of Appeals concluded that, if a state opts to try a petty offense to a jury, then due process requires the jury to reach a unanimous verdict to convict. Jury unanimity is a constitutional bedrock of trial by an impartial jury in a criminal case. Further, given the racist underpinnings of Oregon's nonunanimous jury system, the court could not conclude that nonunanimous verdicts for petty offenses comported with due process.

Reversed and remanded.

On remand from the Oregon Supreme Court, *State v. Heine*, 366 Or 760, 468 P3d 952 (2020).

David B. Connell, Judge.

Sara F. Werboff, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Susan G. Howe, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

LAGESEN, P. J.

Reversed and remanded.

**LAGESEN, P. J.**

This case is before us on remand from the Oregon Supreme Court for reconsideration in light of the United States Supreme Court's decision in *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020). *State v. Heine*, 366 Or 760, 468 P3d 952 (2020).

A 12-person jury found defendant guilty, by non-unanimous verdicts, of two crimes: the Class C felony of tampering with a witness, ORS 162.285, and the Class B misdemeanor of harassment, ORS 166.065. At this point, the parties agree that defendant's felony conviction must be reversed because the jury's verdict was not unanimous. The issue is whether the same is true for his misdemeanor conviction. That is, if an Oregon misdemeanor charge is tried to a 12-person jury, must the verdict be unanimous to convict?[1] We conclude that it must be and, for that reason, reverse both convictions and remand.

A grand jury indicted defendant on three felony charges (two counts of coercion, one count of tampering with a witness) and two misdemeanor charges (two counts of harassment). A 12-person petit jury found defendant guilty of tampering with a witness and one count of harassment by 11-1 guilty verdicts. It acquitted him on the remaining charges. Defendant appealed, we affirmed without opinion, and defendant petitioned the Oregon Supreme Court for review of our decision. *See Heine*, 366 Or 760; *see also State v. Heine*, 299 Or App 666, 449 P3d 609 (2019) (affirming without opinion). Then, the United States Supreme Court decided *Ramos*. It held that the Sixth Amendment to the United States Constitution right to trial "by an impartial jury," as incorporated against the states via the Fourteenth Amendment to the United States Constitution, includes the right to a unanimous verdict in the case of a "serious offense." *Ramos*, 590 US at ___, 140 S Ct at 1394-97. The Oregon Supreme Court, in turn, vacated our previous decision and remanded to us "for reconsideration in light of *Ramos*." *Heine*, 366 Or 760.

---

[1] Misdemeanors may be tried to a six-person jury. ORS 136.210(2). The verdict of a six-person jury must be unanimous, *State v. Rolfe*, 304 Or App 461, 465, 468 P3d 503 (2020), so the possibility of a nonunanimous verdict on a misdemeanor arises only when such charges are presented to a 12-person jury.

On remand, the parties have supplied helpful supplemental briefing and oral argument. They agree, as noted, that defendant's felony conviction must be reversed.

The remaining question, one we have not yet considered on the merits, is whether defendant's misdemeanor conviction also must be reversed. That remains a question because (1) defendant's conviction is a Class B misdemeanor for which a maximum of six months' incarceration is authorized, ORS 161.615(2); and (2) the Sixth Amendment allows for "petty offenses"—those for which no more than six months of incarceration is authorized—to be tried with no jury whatsoever. *Ramos*, 590 US at ___, 140 S Ct at 1394 n 7 ("Under existing precedent and consistent with a common law tradition not at issue here, a defendant may be tried for certain 'petty offenses' without a jury." (Quoting *Cheff v. Schnackenberg*, 384 US 373, 379, 86 S Ct 1523, 16 L Ed 2d 629 (1966).)). So, if a state can dispense with a jury altogether, can it dispense with the requirement of unanimity when it elects to use a jury to try a petty offense?[2] Or, does a unanimity requirement go hand-in-hand with the use of a jury to determine criminal liability?

Defendant argues that it does. Defendant acknowledges, as did the Court in *Ramos*, that the Sixth Amendment, as incorporated against the states by way of the Fourteenth Amendment, did not require Oregon to supply him with a jury trial for a petty offense. But, once the state did so, defendant contends, due process independently required the state to supply a fair jury process, something that, in defendant's view, required unanimity for a conviction. In support of that proposition, defendant points to *Evitts v. Lucey*, 469 US 387, 105 S Ct 830, 83 L Ed 2d 821 (1985).

In response, the state argues in the main that the fact that the Sixth and Fourteenth Amendments do not require jury trials for petty offenses is dispositive. In essence, in the state's view, because the federal constitution

---

[2] Since *Ramos* was decided, we have twice upheld convictions for Class B misdemeanors that were entered on nonunanimous verdicts. *See State v. Paluda*, 307 Or App 834, 479 P3d 345 (2020); *State v. Gutierrez*, 304 Or App 431, 466 P3d 75 (2020). Neither case required us to address the point at issue here: whether having chosen to provide a jury trial on a misdemeanor when not otherwise required to do so, due process requires jury unanimity.

gives the state the discretion not to supply any jury at all for petty offenses, allowing a jury to convict of a petty offense by a nonunanimous jury verdict is compatible with the federal constitution.

We are persuaded by *Evitts*, together with the reasoning in *Ramos*, that, if a state opts to try a petty offense to a jury, then due process requires the jury to reach a unanimous verdict to convict.

At issue in *Evitts* was whether a criminal defendant has the right to the effective assistance of counsel during an initial direct appeal provided by a state as a matter of right. 469 US at 388-89. Arguing against that result, the state (Kentucky) pointed to the fact that, under *McKane v. Durston*, 153 US 684, 14 S Ct 913, 38 L Ed 867 (1894), "a State need not provide a system of appellate review as of right at all." *Evitts*, 469 US at 400. Consequently, Kentucky argued, any deficiency in that constitutionally optional appellate process "'is of no due process concern to the Constitution.'" *Id.* (quoting Kentucky's brief).

The Court was not convinced by Kentucky. Although the Court recognized that, under its precedent, the state had the discretion to supply no appellate process at all, it concluded that, "when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution— and, in particular, in accord with the Due Process Clause." *Id.* at 401. Further, the Court explained, due process requires that whatever process a state offers must, ultimately, be one that is consistent with the notion of "fairness between the State and the individual dealing with the State." *Id.* at 405 (internal quotation marks omitted).

The circumstances in which we find ourselves are quite similar to those in *Evitts*. Under *Cheff*, the state was not required to provide defendant with a jury trial to convict him of a Class B misdemeanor. *Cheff*, 384 US at 379. A court trial would have satisfied the Sixth and Fourteenth Amendments. *See id.* But, having elected to provide defendant with a jury trial, that jury trial was required to comport "with the dictates of the Constitution—and, in particular, [be] in accord with the Due Process Clause." *Evitts*,

469 US at 401. Here, in view of what we have learned from *Ramos*, we conclude that defendant's conviction by a nonunanimous verdict does not satisfy due process. That is so for two reasons.

First, in overruling *Apodaca v. Oregon*, 406 US 404, 92 S Ct 1628, 32 L Ed 2d 184 (1972), the precedent allowing for nonunanimous verdicts in state courts, the Court made clear that a key reason for discarding prior case law was that jury unanimity is constitutional bedrock when it comes to what it means to be tried by an "impartial jury." Taking a no-page-unturned tour of learned treatises addressing the importance of jury unanimity, the Court explained:

> "Wherever we might look to determine what the term 'trial by an impartial jury trial' meant at the time of the Sixth Amendment's adoption—whether it's the common law, state practices in the founding era, or opinions and treatises written soon afterward—the answer is unmistakable. A jury must reach a unanimous verdict in order to convict."

*Ramos*, 590 US at ___, 140 S Ct at 1395. And then it repeated, "If the term 'trial by an impartial jury' carried any meaning at all, it surely included a requirement as long and widely accepted as unanimity." *Id.* at 1396.

The takeaway, as we see it, is that the unanimity requirement is a core and critical component of an impartial jury in a criminal case. Because of that, it is not something that due process allows a state to dispense with by entering convictions on nonunanimous guilty verdicts. Otherwise, the constitution would be sanctioning convictions by a jury that did not qualify as an impartial one under *Ramos*, something that does not comport with the idea of a fair process.

Second, in addressing Oregon's practice of entering criminal convictions based on nonunanimous jury verdicts, the Court made note of the racist origins of that practice. It observed, "Adopted in the 1930s, Oregon's rule permitting nonunanimous verdicts can be similarly traced to the rise of the Ku Klux Klan and efforts to dilute 'the influence of racial, ethnic, and religious minorities on Oregon juries.'" *Ramos*, 590 US at ___, 140 S Ct at 1394 (quoting *State v. Williams*, No. 15CR58698, at 16 (Multnomah Cty Cir Ct, Dec 15, 2016) (James, Circuit Judge) (footnote omitted)).

Although the majority opinion did not reach the issue, having concluded that a unanimity requirement is an essential part of an impartial jury, Justice Sotomayor and Justice Kavanaugh reasoned that the racist underpinnings of Oregon's nonunanimous jury practice also brought it into conflict with the Fourteenth Amendment, apart from the incorporated Sixth Amendment right.

Justice Sotomayor wrote:

"Finally, the majority vividly describes the legacy of racism that generated Louisiana's and Oregon's laws. Although Ramos does not bring an equal protection challenge, the history is worthy of this Court's attention. That is not simply because that legacy existed in the first place—unfortunately, many laws and policies in this country have had some history of racial animus—but also because the States' legislatures never truly grappled with the laws' sordid history in reenacting them. *See generally United States v. Fordice*, 505 US 717, 729, 112 S Ct 2727, 120 L Ed 2d 575 (1992) (policies that are 'traceable' to a State's *de jure* racial segregation and that still 'have discriminatory effects' offend the Equal Protection Clause).

"Where a law otherwise is untethered to racial bias—and perhaps also where a legislature actually confronts a law's tawdry past in reenacting it—the new law may well be free of discriminatory taint. That cannot be said of the laws at issue here."

*Ramos*, 590 US at ___, 140 S Ct at 1410 (Sotomayor, J., concurring) (internal cross-references omitted).

Similarly, Justice Kavanaugh wrote:

"In light of the racist origins of the non-unanimous jury, it is no surprise that non-unanimous juries can make a difference in practice, especially in cases involving black defendants, victims, or jurors. After all, that was the whole point of adopting the non-unanimous jury requirement in the first place. And the math has not changed. Then and now, non-unanimous juries can silence the voices and negate the votes of black jurors, especially in cases with black defendants or black victims, and only one or two black jurors. The 10 jurors 'can simply ignore the views of their fellow panel members of a different race or class.' *Johnson v. Louisiana*, 406 US 356, 397, 92 S Ct 1620, 32 L Ed 2d

152 (1972) (Stewart, J., dissenting). That reality—and the resulting perception of unfairness and racial bias—can undermine confidence in and respect for the criminal justice system. The non-unanimous jury operates much the same as the unfettered peremptory challenge, a practice that for many decades likewise functioned as an engine of discrimination against black defendants, victims, and jurors. In effect, the non-unanimous jury allows backdoor and unreviewable peremptory strikes against up to 2 of the 12 jurors."

*Id*. at ___, 140 S Ct at 1417-18 (Kavanaugh, J., concurring).

To conclude that Oregon's practice of accepting nonunanimous jury verdicts for misdemeanors comports with the requirements of due process, we would need to account for why accepting nonunanimous verdicts for misdemeanors is consistent with the notion of "fairness between the State and the individual dealing with the State," in the face of the racially discriminatory flaws in the system so clearly articulated by Justice Sotomayor and Justice Kavanaugh. *Evitts*, 469 US at 405 (internal quotation marks omitted). That is, we would have to be able to explain why a system that, in Justice Kavanaugh's words, "function[s] as an engine of discrimination against black defendants, victims, and jurors" nonetheless is fair when applied to misdemeanors. *Ramos*, 590 US at ___, 140 S Ct at 1418 (Kavanaugh, J., concurring). We find ourselves unable to do that.

For these reasons, we conclude that, consistent with *Evitts* and *Ramos*, due process requires jury unanimity to convict a criminal defendant when the defendant is tried by a jury, regardless of the nature of the offense for which the defendant is on trial. Because defendant's convictions here were entered based on nonunanimous verdicts, we reverse both of them and remand for further proceedings.

Reversed and remanded.