1

Argued and submitted August 5, 2020, reversed and remanded July 8, petition for review denied November 24, 2021 (368 Or 788)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JESSE JEROME PHILLIPS,
aka Jessey Jerome Phillips,
*Defendant-Appellant.*

Multnomah County Circuit Court
18CR03448; A169250

493 P3d 548

Defendant appeals a judgment of conviction for fourth-degree assault constituting domestic violence, ORS 163.160 (Count 1), and harassment, ORS 166.065 (Count 2). A nonunanimous jury found him guilty of both offenses. In three of his assignments of error, defendant argues that the trial court erred by instructing the jury that it could reach nonunanimous verdicts and challenges its decision to accept the nonunanimous verdicts on both charges. Defendant also assigns error to the court's decision to include an "initial aggressor" limitation in the jury instructions. *Held*: The trial court did not err in giving the "initial aggressor" limitation jury instruction. In light of *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), due process requires jury unanimity to convict a criminal defendant, regardless of the nature of the offense.

Reversed and remanded.

Melvin Oden-Orr, Judge.

Stacy M. Du Clos, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Patrick M. Ebbett, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

ORTEGA, P. J.

Reversed and remanded.

**ORTEGA, P. J.**

Defendant appeals a judgment of conviction for fourth-degree assault constituting domestic violence, ORS 163.160 (Count 1), and harassment, ORS 166.065 (Count 2). A nonunanimous jury found him guilty of both offenses. In three of his assignments of error, defendant argues that the trial court erred by instructing the jury that it could reach nonunanimous verdicts and challenges its decision to accept the nonunanimous verdicts on both charges. As we briefly discuss below, in light of *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), due process requires jury unanimity to convict a criminal defendant, regardless of the nature of the offense being tried, and we reverse both convictions entered based on nonunanimous verdicts and remand for further proceedings.

Defendant raises two additional assignments of error. The first asserts that the trial court erred by excluding a defense witness's testimony based on a discovery violation. Given our disposition of defendant's challenges to the nonunanimous jury instruction and verdicts, we need not address that assignment. Defendant also assigns error to the trial court's decision to include an "initial aggressor" limitation in the jury instructions. Because that issue may arise again on remand, we address it here and conclude that the court did not err in giving that instruction.

We begin by discussing the jury instruction issue. We review the trial court's jury instructions for legal error. *State v. Harper*, 296 Or App 125, 126, 436 P3d 44 (2019). A trial court commits reversible error when it incorrectly instructs the jury on a material element of a claim or defense and that instructional error allows the jury to reach a legally erroneous outcome. *Id*.

The facts relevant to the instruction are not disputed. Defendant and Largaespada were in a romantic relationship and share a daughter, M. At the time of the events at issue, the couple did not reside together, and Largaespada had exclusive custody of M, who was then two years old. On the day of the incident, defendant, Largaespada, M, and Largaespada's son were watching television at Largaespada's home. Defendant and Largaespada began quarrelling, and

Largaespada left with her son to diffuse the situation. She returned home to find defendant and M gone. She tried calling defendant and, when he did not answer, called his sister-in-law and then the police. She then spotted defendant driving so she drove alongside him and told him to return their daughter immediately. Both defendant and Largaespada returned to the parking lot of Largaespada's apartment. When she went to retrieve M from the passenger side seat, defendant grabbed M and put her on his lap. Largaespada then went around to the driver side to retrieve M from his lap, but defendant resisted. Largaespada finally succeeded and, while M was in her arms, defendant spit in Largaespada's face. She reacted by grabbing his shirt collar and attempted to spit on him but could not develop enough saliva to do so. Defendant hit Largaespada in the face with a closed fist. Defendant then left and Largaespada reported the incident to the police, and defendant was charged with fourth-degree assault constituting domestic violence, ORS 163.160, and harassment, ORS 166.065.[1]

At trial, the court granted defendant's request to include a self-defense instruction based on the evidence that, after defendant spit on Largaespada, she grabbed his shirt, and then he hit her. The court explained that its "assumption is that if there was a swing, that is the self-defense in response to the grabbing of the shirt." In response to that ruling, the state requested Uniform Criminal Jury Instruction (UCrJI) 1110, the "initial aggressor" instruction.[2] Defendant objected, asserting that the record lacked evidence to support giving that instruction. He argued that spitting was not an act of aggression for purposes of the initial aggressor instruction. He relied on *State v. Doris*, 51 Or

---

[1] ORS 166.065 states a "person commits the crime of harassment if the person intentionally" harasses or annoys another by subjecting the other person to "offensive physical contact[.]"

[2] UCrJI 1110 provides:

"Ordinarily, a person is not justified in using physical force on another person if he or she was the initial aggressor. However, the defendant's use of physical force may be justified even though he or she was the aggressor if you find that he or she withdrew from the encounter and effectively communicated to the other person an intent to withdraw from the encounter, but the other person nevertheless continued or threatened to continue the use of unlawful physical force on the defendant."

136, 94 P 44 (1908), for the proposition that merely offensive words are not sufficient to deprive someone of the right to self-defense, and then likened spitting to offensive words. The state responded that harassment is aimed at "offensive physical contact" and that spitting in the face constitutes offensive physical contact and was the initial act of aggression. The court agreed with the state and granted its request for the instruction.

In challenging the initial aggressor instruction on appeal, defendant argues that spitting does not qualify as an act of aggression for purposes of the instruction because it is not a threat or use of physical force. He argues that an aggressor must employ "violence" by threatening or striking another person and that, because spitting is not an act of aggression, there was no evidence to support the giving of the instruction. The state maintains that a rational factfinder could find that propelling saliva into someone's face constitutes "striking" another person or a "physical act" against them. We agree with the state.

A person may use physical force in self-defense against "what the person reasonably believes to be the use or imminent use of unlawful physical force, and the person may use a degree of force which the person reasonably believes to be necessary for the purpose." ORS 161.209. Once raised, the state has the burden to disprove self-defense beyond a reasonable doubt. ORS 161.055(1). One way of doing so is to prove that one or more of the limitations in ORS 161.215 are present. *State v. Freeman*, 109 Or App 472, 476, 820 P2d 37 (1991). ORS 161.215 states, in relevant part:

> "Notwithstanding ORS 161.209 (Use of physical force in defense of a person), a person is not justified in using physical force upon another person if:
>
> "* * * * *
>
> "(2)  The person is the initial aggressor, except that the use of physical force upon another person under such circumstances is justifiable if the person withdraws from the encounter and effectively communicates to the other person the intent to do so, but the latter nevertheless continues or threatens to continue the use of unlawful physical force[.]"

UCrJI 1110, the initial aggressor instruction, parrots ORS 161.215(2).

The trial court must give a party's requested jury instruction if there is evidence to support it and it correctly states the law. Sufficient evidence to support giving an instruction exists when, viewing the record, "it would be rational for a factfinder" to find in support of the party's theory. *State v. Wolf*, 288 Or App 613, 616-17, 406 P3d 1105 (2017). One form of instructional error is when a court gives an instruction that correctly states the law but "there is no evidence in the record to support giving the instruction." *Montara Owners Assn. v. LaNoue Development, LLC*, 357 Or 333, 348, 353 P3d 563 (2015). Defendant alleges that type of error here, arguing that spitting at Largaespada could not have made him an "initial aggressor" under ORS 161.215(2). Thus, we must determine whether defendant's act of spitting in Largaespada's face can support a jury finding that he was an "initial aggressor" for purposes of ORS 161.215(2), such that the trial court correctly gave the initial aggressor jury instruction. That is a question of statutory construction.

To evaluate whether defendant could have been an initial aggressor under ORS 161.215(2), we give primary weight to the text and context of the statute and consider any helpful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). The phrase "initial aggressor" is not defined in ORS 161.215 or elsewhere in the statutes, so we consider the "plain, natural, and ordinary" meaning of the phrase and consult dictionary definitions of those terms that may illuminate what the legislature intended. *State v. McNally*, 361 Or 314, 321, 392 P3d 721 (2017). However, when a term is a legal "term of art," we look to its "established legal meaning as revealed by, for starters at least, legal dictionaries." *Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296, 337 P3d 768 (2014). "We potentially also consider the overall statutory scheme in which a legal term appears, as well as the meaning that the term has for regulators who oversee the field." *Id.* The term "aggressor" has long been a legal term of art used with the criminal defense of self-defense. *See State v. Gray*, 43 Or 446, 74 P 927 (1904) (discussing who was the first "aggressor" for purposes of self-defense); *see also* Commentary to Criminal Law Revision

Commission Proposed Oregon Criminal Code, Final Draft and Report § 24, 24 (July 1970) (providing that the section is "basically a codification of Oregon case law doctrines" and discussing, among other cases, *Gray*). As such, we consider its legal meaning in construing ORS 161.215(2).

Defendant argues that Oregon's self-defense statutory scheme is adapted from Michigan and New York statutes on the same subject and notes that New York has interpreted the initial aggressor limitation to require the use or threatened use of physical force. Commentary § 24; *see* NY Penal Law § 35.00 (McKinney); *People v. Walker*, 26 NY3d 170, 175, 42 NE3d 688, 692 (NY App Div 2015); *People v. Baez*, 118 AD2d 507, 508, 500 NYS2d 3, 4 (NY App Div 1986); *People v. Giammarino*, 105 AD2d 802, 803, 481 NYS2d 435, 436 (NY App Div 1984) (an aggressor must use or threaten the use of physical force rather than initiate a verbal argument); *People v. Pagnotta*, 144 AD 265, 266-67, 128 NYS 1061, 1061-1062 (NY App Div 1911) (same). Defendant concedes that spitting in a person's face constitutes "offensive physical contact" sufficient to prove the crime of harassment, but suggests that spitting is more akin to verbal provocation and therefore insufficient to support treating him as an initial aggressor.

We disagree. When interpreting Oregon statutes, the question is what the Oregon legislature that enacted that statute intended. As noted above, the initial aggressor section, although modeled on the wording in the Michigan and New York statutes, was a codification of *Oregon* case law. As such, we look to our case law and not that of other states to determine the intent of the legislature in enacting that statute. Commentary § 24 at 24 (providing that the section is "basically a codification of Oregon case law doctrines").

We agree that "provocation by mere words, if unaccompanied by any overt act of hostility" will not cause a person to become an initial aggressor for ORS 161.215(2). *Penn v. Henderson*, 174 Or 1, 14, 146 P2d 760 (1944). But spitting in someone's face is not "mere words" "unaccompanied by any overt act of hostility." Spitting in someone's face can be an act of hostility towards a person that also involves physical contact, which we have likened to striking

or slapping. *See State v. Keller*, 40 Or App 143, 146, 594 P2d 1250 (1979) ("[W]e conclude that spitting on another can be an interference with the physical integrity of the victim that is comparable to striking, slapping, etc. It follows that the trial court erred in concluding, as a matter of law, that spitting on another cannot be offensive physical contact within the meaning of ORS 166.065(1)(a)."). And it has long been recognized that slapping can cause someone to be an initial aggressor for purposes of self-defense. *See Silfast v. Matheny*, 171 Or 1, 136 P2d 260 (1943); *see also* Commentary § 24 at 25 (citing *Silfast* for that proposition and stating that the initial aggressor section is consistent with that holding). The context found in other parts of the criminal code support this conclusion; spitting on another constitutes the crime of misdemeanor harassment (as defendant concedes), and if directed at a public safety officer it constitutes aggravated harassment. *See* ORS 166.070(1)(c) ("A person commits the crime of aggravated harassment if the person, knowing that the other person is a \*\*\* [p]ublic safety officer, intentionally propels saliva at the public safety officer, and the saliva comes into physical contact with the public safety officer \*\*\*."). As such, we conclude that propelling saliva into someone's face constitutes a physical act that could support a finding that one is an initial aggressor. Accordingly, we conclude that there was sufficient evidence in the record to support the giving of the initial aggressor instruction.

Defendant also contends that the trial court erred when it instructed the jury that it could reach a nonunanimous verdict and when it accepted nonunanimous verdicts for Counts 1 and 2. The state partially concedes defendant's contentions and asserts that only Count 1, the felony fourth-degree assault conviction, should be reversed. In the state's view, defendant's conviction for Count 2, harassment, should not be reversed because it is a Class B misdemeanor and the Sixth Amendment right to a jury trial does not apply to such offenses.

We accept the state's concession and reverse Count 1, in light of *Ramos*. We also conclude that Count 2 must be reversed for the reasons set forth in *State v. Heine*, 310 Or App 14, 21, 484 P3d 391 (2021) (concluding that "due process requires jury unanimity to convict a criminal defendant

when the defendant is tried by a jury, regardless of the nature of the offense for which the defendant is on trial").

Reversed and remanded.