No. 851　　　　　October 1, 2025　　　　　695

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BENJAMIN SINYELLA KING,
aka Benjamin King, aka Benjamin S. King,
*Defendant-Appellant.*

Multnomah County Circuit Court
22CR60769; A183043

Angela F. Lucero, Judge.

Submitted September 8, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Peter G. Klym, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Jordan R. Silk, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

Defendant was involved in a road rage incident that led to his being convicted of attempted fourth-degree assault, ORS 163.160, harassment, ORS 166.065, and second-degree disorderly conduct, ORS 166.025. He raises three assignments of error on appeal, all relating to the initial-aggressor limitation on self-defense and defense of others. In his first two assignments of error, defendant contends that the trial court erred in overruling two objections that he made to a question calling for a legal conclusion. In his third assignment of error, defendant argues that the trial court erred in refusing to instruct the jury on the meaning of "initial aggressor." We conclude that the trial court did not err in the claimed respects and, accordingly, affirm.

## FACTS

Defendant's mother, King, cut off C while changing lanes in her van. C had to slam on the brakes, causing his little dog to hit the dashboard. C was very upset and, at the next stoplight, pulled beside the van and yelled at King. Defendant got out of the van, and a physical altercation ensued between him and C. The state subsequently charged defendant with various crimes, and he raised self-defense and defense of another. At trial, the state's witnesses were C, a police officer, and six eyewitnesses. King and a character witness testified for the defense.

C's version of events was that, when he pulled alongside the van at the stoplight, he rolled down his window and yelled at King, including cursing at her and telling her that she almost killed him. Defendant then emerged from the back of the van and began punching C through C's open window. C tried to get defendant off him but could not do so. As defendant continued punching, C accelerated through the intersection, with defendant initially hanging onto C's vehicle and eventually being flung to the ground in the intersection. The testimony of the state's eyewitnesses was generally consistent with C's testimony. Some thought that defendant and C exchanged words before defendant started punching C, but all agreed that C had remained in the vehicle throughout, and that defendant was the only one punching. Some

saw C grabbing at defendant's arm or hair (defendant had long hair), but only after he started punching C, and one witness specifically testified that C's arm movements appeared defensive.

Defendant's version of events was relayed through the testimony of a police officer and King. The police officer testified that, when she spoke with defendant at the hospital, he told her that C had threatened to kill King, and he claimed to have punched C only after C grabbed defendant's hair and started driving. For her part, King testified that C had yelled at her at the stoplight, including telling her to "pull over and get out" and that "I will kill you." King heard defendant say, "not today," then defendant got out of the van. King testified that she saw the driver's door of C's vehicle open "four or five inches," defendant pushed it closed, C tried to open it again, and defendant pushed it closed again. Then there was a struggle between defendant and C, but King could not see exactly what happened.

The jury convicted defendant of attempted fourth-degree assault, harassment, and second-degree disorderly conduct. It acquitted him on other charges.

## EVIDENTIARY RULINGS

The first two assignments of error pertain to related questions that the prosecutor asked two eyewitnesses, Garris and Higham, over defendant's objections.

After Garris described what she had seen, the prosecutor asked whether, from her vantage point, the person in the vehicle or the other person was "the aggressor." Defendant objected that the question called for a legal conclusion. The trial court overruled the objection, stating that Garris could "testify as to what her observations were." The prosecutor then re-asked the question, rephrasing it in the process, such that the question actually answered was which person was "more aggressive":

"[PROSECUTOR]:  From your vantage point, could you see which person was being more aggressive towards the other person?

"[GARRIS]: Yes. The person outside the vehicle was definitely more aggressive and had the ability to be more aggressive.

"[PROSECUTOR]: "Why do you say he had the ability to be more aggressive? * * *

"[GARRIS]: There was no way to—I've been hit through a car window, and there is no way to really avoid that, other than driving away. And potentially running the person over."

As for Higham, he had seen the entire incident, except for the initial lane change, and he testified in detail to what he saw. The prosecutor then asked Higham, "Based on your observations, who was the initial physical aggressor?" Defendant objected that the question called for a legal conclusion. The court overruled the objection. Higham answered, "Defendant." The prosecutor asked, "Are you certain?" Higham answered, "Yes."

On appeal, defendant contends that it was error to overrule his objections. He points out that he had raised the defenses of self-defense and defense of another and that the state was relying on the initial-aggressor limitation to try to prove that those defenses did not apply. Defendant asserts that whether he was the initial aggressor was therefore "a fact the jury had to find," and that Garris and Higham should not have been allowed to give lay opinion testimony regarding "a legal conclusion reserved for the jury." The state counters that Garris and Higham could give lay opinion testimony based on their personal observations of the incident. Reviewing for abuse of discretion, *State v. Brannan*, 332 Or App 36, 38, 549 P3d 19 (2024), we agree with the state.

OEC 701 allows a lay witness to testify to "opinions or inferences" that are "[r]ationally based on the perception of the witness" and "[h]elpful to a clear understanding of testimony of the witness or the determination of a fact in issue." The rule "adopts a liberal standard for the admissibility of lay opinions" under which a lay witness may "testify as to what he has perceived by using a 'shorthand' description which in reality is an opinion." *State v. Lerch*, 296 Or 377, 383, 677 P2d 678 (1984). That the opinion "embraces an ultimate issue to be decided by the trier of fact" does not affect its admissibility.

OEC 704 ("Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."); *State v. Wright*, 323 Or 8, 17, 913 P2d 321 (1996) (recognizing same).

In this case, defendant claimed to have acted in self-defense or defense of King. Generally, "a person is justified in using physical force upon another person for self-defense or to defend a third person from what the person reasonably believes to be the use or imminent use of unlawful physical force, and the person may use a degree of force which the person reasonably believes to be necessary for the purpose." ORS 161.209. However, a limitation on that defense is that a person "is not justified in using physical force upon another person if * * * [t]he person is the initial aggressor"—subject to an exception for clear withdrawal that is not at issue in this case. ORS 161.215(1)(b). If a defendant raises defense of self or others, it is the state's burden to disprove the defense beyond a reasonable doubt. ORS 161.055(1).

Thus, as here, the state may seek to disprove that a defendant acted in self-defense or defense of another by proving that the defendant was the initial aggressor. "The term 'aggressor' has long been a legal term of art used with the criminal defense of self-defense." *State v. Phillips*, 313 Or App 1, 5, 493 P3d 548, *rev den*, 368 Or 788 (2021). It refers to the first person to engage in an overt act of hostility, such as slapping or striking a person, *Silfast v. Matheny*, 171 Or 1, 10, 136 P2d 260 (1943), or spitting in a person's face, *Phillips*, 313 Or App at 6-7. It does not refer to mere verbal provocation—"provocation by mere words, if unaccompanied by any overt act of hostility, will not justify an assault." *Penn v. Henderson*, 174 Or 1, 14, 146 P2d 760 (1944); *see also Phillips*, 313 Or App at 6 (reiterating same).

To prove that defendant was the initial aggressor, the state asked each of its witnesses to describe the incident as they experienced or witnessed it, including asking Garris her opinion as to which person was "more aggressive" and asking Higham his opinion as to which person was the "initial physical aggressor." Those questions were not improper. Although the meaning of "initial aggressor" in ORS 161.215(1)(b) is a question of statutory construction and thus one of law—such

that it may be the appropriate subject of a jury instruction—who the initial aggressor was in a particular situation is ultimately a question of fact for the jury to decide based on evidence. *See Phillips*, 313 Or App at 5 (considering whether the evidence was sufficient to support "a jury finding" that the defendant was the "initial aggressor"). The jury in this case therefore needed to make a factual finding as to whether defendant was the initial aggressor. Higham's testimony that, based on what he saw, defendant was the "initial physical aggressor" went directly to that ultimate issue of fact, but, per OEC 704, that did not make it inadmissible. The same is true of Garris's testimony that defendant was the "more aggressive" of the two men, which does not even go directly to who the *initial* aggressor was.

Importantly, neither Higham nor Garris were asked to opine on the law, which would be impermissible. We have previously held, for example, that a trial court properly excluded a sheriff's deputy from giving expert testimony "as to what constitutes a violation of" a particular statute, because such testimony "would be more of a legal interpretation than a factual interpretation," and the proper construction of a statutory term "was a matter of law for the court to determine and to instruct the jury [on]—as, indeed, it did." *Stokes v. Lundeen*, 168 Or App 430, 441, 7 P3d 586, *rev den*, 331 Or 283 (2000) (internal quotation marks omitted); *see also* Laird C. Kirkpatrick, *Oregon Evidence*, 648 (7th ed 2020) ("In general, questions of law are for the court and are not a proper subject for expert testimony to the jury."). Here, the prosecutor did not ask the witnesses to opine on the meaning of "initial aggressor" in ORS 161.215(1)(b), nor did he ask them to offer any legal conclusion as to whether defendant met that definition. He instead asked only whom they perceived to be the "initial physical aggressor" or the "more aggressive" participant, based on what they saw, without tying those questions to any legal definition. It was up to the jury to consider all of the evidence, including that testimony, in deciding whether defendant was the "initial aggressor," as they understood that term after receiving their instructions.

The trial court did not abuse its discretion in overruling defendant's evidentiary objections.

### "INITIAL AGGRESSOR" INSTRUCTION

We next consider defendant's third assignment of error, in which he argues that the trial court erred in failing to instruct the jury on the meaning of "initial aggressor." Defendant requested an instruction on the meaning of that term, but the trial court declined to give it. Later, during deliberations, the jury expressly sought guidance from the court on that issue, sending out a note that asked, "What [does] the law state about being initial aggressor?" The court declined to answer; it told the jurors that they had received "all of the jury instructions regarding the law they will receive in this case."

Defendant argues that the jury could not reach a proper verdict without an instruction on the meaning of "initial aggressor," because a basic understanding of that legal term of art was necessary to the jury's task. *See State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990) ("The court generally must instruct on all essential elements of the crime charged."); *State v. Bistrika*, 261 Or App 710, 728, 322 P3d 583, *rev den*, 356 Or 397 (2014), *cert den*, 577 US 828 (2015) (giving "an incomplete and thus inaccurate legal rule to apply to the facts" is one form of instructional error (internal quotation marks omitted)). The state disagrees. It argues that the trial court did not err in refusing to give defendant's requested instruction, as that instruction contained an inaccuracy that made it more favorable to the state than it should have been, and that the court itself had no obligation to instruct the jury on the meaning of "initial aggressor" without a correct instruction offered by defendant.

The Supreme Court recently held in *State v. Worsham*, 373 Or 739, 741, 571 P3d 759 (2025), that, in a criminal case in which self-defense and the initial-aggressor limitation are at issue, it is not plain error not to give a jury instruction on the meaning of "initial aggressor" if none is requested. The court identified two categories of instructional error—affirmative errors (errors "in giving an instruction") and errors of omission (errors "in failing to give an instruction")—and explained that "it is generally impossible for a trial court's failure to give an *unrequested* custom supplemental instruction to qualify as plain error," at least absent a uniform instruction on the issue, because there is no proposed instructional language to

assess for correctness.[1] *Id*. at 746, 748 (emphasis in original). As we understand it, the holding of *Worsham* is deeply rooted in the limitations of plain-error review. We do not understand it to suggest that a trial court may refuse to give a legally correct instruction on the meaning of "initial aggressor" *if one is requested*. As noted in *Worsham*, parties are generally "entitled to have a supplemental instruction given when the existing instructions, read as a whole, do not fully cover a necessary legal point, and when the requested supplemental instruction is legally correct in all respects and supported by the evidence." *Id*. at 748 (internal citation omitted).

In this case, unlike in *Worsham*, defendant did request an instruction on the meaning of "initial aggressor." The problem for defendant is that the instruction he requested was not quite right. It stated, "'Initial aggressor' means the first person to use hostile physical force *or to threaten the use of hostile physical force*." (Emphasis added.) But a mere threat of hostile physical force is not enough to make someone the initial aggressor—it must be accompanied by an overt act of hostility. *Penn*, 174 Or at 14. We therefore cannot say that the requested instruction was "legally correct in all respects." *Worsham*, 373 Or at 748. It follows that there is no reversible error. The trial court was not required to give the requested instruction, because it was legally incorrect (albeit in a way more favorable to the state than defendant), and the trial court itself had no obligation to *sua sponte* give a correct instruction, per the Supreme Court's decision in *Worsham*. Defendant's third assignment of error therefore fails.

Affirmed.

---

[1] The Supreme Court has long made clear that, although uniform instructions are a useful tool for the bench and bar, they carry no legal weight. *See State v. Lopez-Minjarez*, 350 Or 576, 583 n 4, 260 P3d 439 (2011) ("The fact that the erroneous instruction is part of the Uniform Criminal Jury Instructions, of course, is inconsequential in the analysis. Those uniform instructions are drafted by a committee of members of the Oregon State Bar and are not themselves the law. They instead are a salutary effort on the part of legal practitioners in Oregon to state the law in a correct way that is helpful to jurors. As this case demonstrates, that effort does not always succeed."). Under *Worsham*, however, the existence of a uniform instruction may be relevant in deciding whether a trial court committed plain error in failing to give a necessary-but-unrequested instruction. *See Worsham*, 373 Or at 748. We note that there is presently no uniform instruction on the meaning of "initial aggressor." *See* UCrJI 1110 (2024) (uniform instruction on "use of physical force in defense of person—aggression").